UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

KEVIN DEVON BRIGGS,

        Plaintiff,                    Case No. 1:13-cv-1160

v.                                            Honorable Robert Holmes Bell

GAIL BURKE et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss the complaint in part and serve it in part as set forth in this Opinion.

**Factual Allegations**

Plaintiff is incarcerated in the Marquette Branch Prison, but the events giving rise to his action occurred at the Bellamy Creek Correctional Facility (IBC). In his *pro se* complaint, Plaintiff sues the following IBC employees: Doctor Gail Burke; Healthcare Unit Manager Ann Karp; Registered Nurses Connie Chick, Lisa Berg and (Unknown) Spurbeck; Licenced Practical Nurse (Unknown) McAllister; and Correctional Officer (Unknown) Fockler.

Plaintiff, who is a diabetic, claims that Defendant McAllister injected him with an incorrect dose of the wrong insulin on July 10, 2010. When Plaintiff complained of low blood sugar later that day to Defendants McAllister and Chick, Defendant Chick told Plaintiff to leave or she would write a misconduct report against him. Plaintiff wrote a grievance for denial of medical treatment for a diabetic reaction. Five days later, Plaintiff was denied insulin by Defendants McAllister and Chick after Plaintiff refused to inject himself with a prepared syringe that contained a clear, unknown liquid. Plaintiff filed another grievance for denial of medical treatment.

On July 23, 2010, Plaintiff claims that Defendants Chick and McAllister verbally abused him while he was taking his insulin injection. According to Plaintiff, the nurses handed him a syringe through a small window slot, he injected himself and then placed the syringe back into the window slot. Shortly after Plaintiff left the healthcare unit, Defendant Fockler stopped Plaintiff, handcuffed him and escorted him to the segregation unit. The same day, Defendant Chick wrote an allegedly false misconduct report against Plaintiff for assault arising from the incident. On July 25, Defendant Spurbeck wrote another allegedly false misconduct against Plaintiff for disobeying a direct order when Plaintiff refused to return the syringe after taking his insulin. Plaintiff was found guilty of both offenses.

Plaintiff complained to Defendant Karp about the nursing staff mishandling his medication and provoking him. Karp replied that Plaintiff had a bad history with the nursing staff and that she was referring Plaintiff to Defendant Burke. On July 29, 2010, Defendant Burke allegedly discontinued Plaintiff's insulin and placed him on oral medication. Plaintiff contends that Burke deprived him of insulin in retaliation for Plaintiff's grievances and complaints against Defendants Chick, McAllister and Spurbeck. Plaintiff claims that he became sick with fever and pain, and had elevated blood sugar from the lack of insulin injections. Plaintiff also developed a cyst near his tail bone, which Dr. Burke examined on August 11, 2010. Dr. Burke scheduled Plaintiff for removal of the cyst and asked him if he was allergic to any medications. Plaintiff indicated that he was allergic to Bactrim and Doxycyclin because those drugs caused a very serious reaction to his penis.

That evening, Defendant Berg delivered Plaintiff's regular medications, along with a pill that was represented as an antibiotic prescribed by Dr. Burke. Plaintiff asked Berg if the pill was Bactrim or Doxycyclin, and she replied, "No." (Compl., ¶ 21, Page ID#8.) In light of Berg's assurances, Plaintiff took the medication. Minutes after taking the pill, Plaintiff's penis starting tingling, itching and swelling. Plaintiff refused his morning medications after Nurse James Leland confirmed that Plaintiff had been given Bactrim. Plaintiff was taken to the health care unit the following morning for the removal of his cyst by Dr. Scott Holmes. Plaintiff complained to Dr. Holmes that Dr. Burke deliberately prescribed him Bactrim after Plaintiff notified her of his adverse reaction to the drug. Dr. Holmes discontinued the prescription.

Plaintiff claims that the Bactrim prescribed by Dr. Burke "caused the skin to peel off the entre head of plaintiff's penis, causing constant pain, bleeding, scabbing, swelling, and permanent discoloration . . ." (Compl., ¶ 26, Page ID#9.) He further claims that he "struggled to

survive for life" as a result of being deprived of insulin from July 29 through December 8, 2010. (Compl., ¶ 27, Page ID#9.) Plaintiff also alleges that he "suffered physical pain on his upper right butt area for approximately 3 1/2 weeks before and after the surgery as a result of Defendant Burke's discontinuing plaintiff's insulin." (Compl., ¶ 25, Page ID#9.) In addition, Plaintiff claims that his reaction to the Bactrim, coupled with the deprivation of insulin, has resulted in erectile disfunction and a depressed libido.

Plaintiff contends that Defendants McAllister, Chick and Fockler violated his First Amendment rights when they retaliated against him for filing grievances by conspiring to write a false assault misconduct report against him. He asserts that the misconduct report also caused him to be seized and placed in segregation in violation of his Fourth Amendment rights. Plaintiff further claims that Defendant McAllister, Chick and Fockler's conduct violated his rights under the Fourteenth Amendment Substantive Due Process Clause and the Eighth Amendment. Plaintiff asserts that Defendant Spurbeck violated his First Amendment rights when she retaliated against him for making complaints by writing a false misconduct against him for disobeying a direct order. He also alleges violations of the Fourth Amendment and Substantive Due Process Clause against Spurbeck. Plaintiff claims that Dr. Burke discontinued his insulin injections in retaliation for his complaints against McAllister, Chick and Spurbeck. He also alleges that Burke violated the Eighth Amendment and Substantive Due Process Clause by denying him insulin for approximately five months and intentionally prescribing him Bactrim after Plaintiff informed him of his adverse reaction to the drug. In addition, Plaintiff asserts an Eighth Amendment claim, as well as state tort claims for negligence and malpractice, against Defendant Berg for delivering the drug to him while denying that it was Bactrim. Plaintiff seeks declaratory relief, as well as compensatory and punitive damages.

**Discussion**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

I.  **Eighth Amendment**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867

(6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's claims that Defendant Burke denied him insulin injections for over four months and intentionally prescribed Bactrim after Plaintiff told him that the drug caused him to suffer serious side effects are sufficient to state an Eighth Amendment claim. In addition, Plaintiff's claims that Defendant Berg delivered the drug to Plaintiff while denying that it was Batrim is sufficient to state an Eighth Amendment claim against Berg.[1]

Plaintiff also asserts an Eighth Amendment claim against Defendants Chick, McAllister and Fockler. "[N]either verbal harassment or threats nor the filing of a false misconduct report constitute punishment within the context of the Eighth Amendment." *Williams v. Reynolds*, No. 98-2138, 1999 WL 1021856, at *1 (6th Cir. Nov. 3, 1999); *Tillman v. Huss*, No. 1:13-cv-297, 2013 WL 4499228, at *11 (W.D. Mich. Aug. 19, 2013); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001) (holding that punishment on the basis of a false misconduct report does not state an Eighth Amendment claim). Plaintiff, therefore, fails to state an Eighth Amendment claim against Defendants Chick, McAllister and Fockler arising from alleged verbal harassment or the writing of a false misconduct charge. However, Plaintiff's allegations that Defendants McAllister and Chick failed ro provide him with proper medical treatment for a diabetic reaction or denied him

---

[1]Because Plaintiff states an Eighth Amendment claim against Berg, the Court will continue to exercise supplemental jurisdiction over Plaintiff's related state tort claims against Defendant Berg for negligence and malpractice. *See* 28 U.S.C. §1367.

necessary insulin injections are sufficient to state Eighth Amendment claim against Defendant Chick and McAllister.

## II. First Amendment Retaliation

Plaintiff claims that Defendants McAllister, Chick, Fockler and Spurbeck retaliated against him for making complaints and filing grievances by conspiring to write false misconduct reports against him in violation of the First Amendment. Plaintiff further alleges that Dr. Burke discontinued his insulin injections in retaliation for his complaints against McAllister, Chick and Spurbeck.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

At this stage of the proceedings, Plaintiff's allegations are sufficient to state a retaliation claim against Defendant McAllister, Chick, Fockler, Spurbeck and Burke.

## III. Fourteenth Amendment Procedural Due Process

Plaintiff's claim that the misconduct charges against him were "false" implicates his Fourteenth Amendment due process rights. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case

in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[2] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally

---

[2] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995); *see also Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails). Plaintiff claims that he was placed in segregation, but such placement for a period following a misconduct charge is not atypical or significant. *See Sandin*, 515 U.S. at 486; *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). Plaintiff, therefore, fails to state a due process claim arising from his misconduct convictions.

    IV.    **Fourteenth Amendment Substantive Due Process**

Plaintiff also asserts a violation of his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431

(6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).

"[C]ourts [are] to carefully scrutinize so-called substantive due process claims brought under § 1983 because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 452 (6th Cir. 2002). "Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there are specific constitutional amendments that apply to Plaintiff's claims. For example, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his medical claims. *See Stevens v. Grafos*, No. 1:12–cv–90, 2013 WL 5332602, at *4 (W.D. Mich. Sept. 23, 2013) (because Plaintiff's right to constitutionally adequate medical care was sufficiently protected by the Eighth Amendment, his substantive due process claim was subject to dismissal). Similarly, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation claims. Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Brandenburg v.*

*Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Likewise, the Fourteenth Amendment Procedural Due Process Clause would apply to protect Plaintiff's liberty interest in the major misconduct proceedings. Consequently, Plaintiff's substantive due process claim will be dismissed.

## V. **Fourth Amendment**

Plaintiff contends that his "seizure" and placement in segregation following the issuance of the misconduct charge for assault violated his Fourth Amendment right against unlawful search and seizure. Plaintiff's claim is without merit as placement in segregation is not a seizure for purposes of the Fourth Amendment. *See Hollins v. Curtin*, No. 1:13-cv-8, 2013 WL 1703880, at *9 (W.D. Mich. Apr. 19, 2013). Plaintiff, therefore, fails to state a Fourth Amendment claim.

## VI. **Defendant Karp**

Plaintiff contends that Defendant Karp failed to take disciplinary or other corrective action with regard to his inadequate treatment by medical staff. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an

administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Karp engaged in any active unconstitutional behavior. While Defendant Karp referred Plaintiff to Defendant Burke for medical treatment, Karp cannot be held liable for Burke's subsequent conduct. Accordingly, Plaintiff fails to state a claim against Defendant Karp.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), Defendant Karp will be dismissed for failure to state a claim. The Court also will dismiss Plaintiff's Fourth Amendment, and Fourteenth Amendment procedural due process and substantive due process claims. In addition, the Court will dismiss the Eighth Amendment claim relating to alleged verbal harassment and false misconduct charges.

The Court will serve Plaintiff's Eighth Amendment medical claims against Defendants Burke, Berg, Chick and McAllister. The Court also will serve Plaintiff's retaliation claims against Defendants Burke, Chick, McAllister, Fockler and Spurbeck.

An Order consistent with this Opinion will be entered.


Dated: <u>January 17, 2014</u>  /s/ Robert Holmes Bell
ROBERT HOLMES BELL
UNITED STATES DISTRICT JUDGE