UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

|  |  |  |
|---|---|---|
| KEVIN DEVON BRIGGS, #447282, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-1160 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| GAIL BURKE, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff filed this lawsuit on October 21, 2013, regarding conditions of his confinement at the Bellamy Creek Correctional Facility (IBC) in July and August of 2010. The defendants are Gail Burke, D.O., Elizabeth Berg, R.N., Connie Chick, R.N., John Spurbeck, R.N.,[1] and Corrections Officer Chip Fockler. Plaintiff alleges that defendants violated his First and Eighth Amendment rights.

Dr. Burke

Plaintiff claims that Dr. Burke violated his Eighth Amendment rights. (Compl. ¶¶ 34-35, Page ID 10-11). By way of background, on July 23, 2010, plaintiff was charged with the major misconduct of assaulting a nurse with a syringe (*Id.* at ¶ 13, Page ID 6) and on July 25, 2010, he was charged with the major misconduct of disobeying a direct order to give back a syringe after taking his insulin. Hearing officers found plaintiff guilty of both major misconduct charges. (*Id.* at ¶¶ 17,

---

[1] Plaintiff also named another nurse, (Unknown) McAllister, as a defendant. Nurse McAllister has never been served or otherwise appeared in this lawsuit.

18, Page ID 7).   Plaintiff  alleges that on July 29, 2010, Dr. Burke discontinued an insulin

prescription and placed plaintiff on "oral medications."   (*Id.* at ¶ 16, Page ID 7).   According to

plaintiff, he was "deprived" of insulin from July 29, 2010, through December 8, 2010.  (*Id.* at ¶ 27,

Page ID 9).   On August 11, 2010, Dr. Burke purportedly prescribed the antibiotic Bactrim after

plaintiff told him that this medication would cause him to have a bad reaction on his penis.  (*Id.* at

¶¶ 20, 26).  Plaintiff alleges that Dr. Burke violated his First Amendment rights.  He alleges that Dr.

Burke's decision to place him on oral medications rather than insulin was in retaliation for plaintiff's

grievances against Nurses Chick, McAllister, and Spurbeck.  (*Id.* at ¶ 16, Page ID 7).

<u>Nurse Berg</u>

Plaintiff alleges that the following actions by Nurse Berg violated his Eighth Amendment

rights. (*Id.* at ¶ 36, Page ID 11).  On August 11, 2010, plaintiff allegedly asked Nurse Berg whether

the pill he was receiving was Bactrim.  She denied that it was Bactrim.  Plaintiff claims that after

taking this pill, he began experiencing tingling, itching, swelling and aching in his penis.  (*Id.* at ¶¶

21-22, Page ID 8).  Plaintiff asks the court, in its discretion to exercise supplemental jurisdiction

over a state-law malpractice claim against Nurse Berg.  (*Id.* at ¶¶ 6, Page ID 11-12).

<u>Nurse Chick</u>

Plaintiff alleges that Nurse Chick violated his Eighth Amendment rights.  (*Id.* at ¶ 30, Page

ID 9).  On July 10, 2010, Nurse Chick allegedly denied plaintiff treatment for a "diabetic reaction."

(*Id.* at ¶ 10, Page ID 5).  On July 15, 2010, Chick purportedly "denied" plaintiff an insulin injection

when he "refused to inject himself with a pre-ready syringe that had a clear unknown liquid."  (*Id.*

at ¶ 11, Page ID 5).  Plaintiff alleges that the misconduct charge Nurse Chick filed against him on

July 23, 2010, for assault with a syringe was retaliatory and constituted a violation of his First

-2-

Amendment rights.  (*Id.* at ¶¶ 11-13, 31, Page ID 5-6, 10).  Plaintiff was found guilty of the misconduct charge.  (*Id.* at ¶ 18, Page ID 7).

Nurse Spurbeck

Plaintiff alleges that Nurse Spurbeck retaliated against him in violation of his First Amendment rights by filing a misconduct charge against him on July 25, 2010, for disobeying a direct order to give back a syringe after taking his insulin.  (*Id.* at ¶¶ 11, 14, 31, Page ID 5-6, 10). Plaintiff was found guilty of the misconduct charge.  (*Id.* at ¶ 17, Page ID 7).

Corrections Officer Fockler

Plaintiff alleges Officer Fockler violated his First Amendment rights by filing statements in support of Nurse Spurbeck's misconduct charge against plaintiff for assault.  (*Id.* at ¶ 30, Page ID 9-10).[2]

Plaintiff seeks declaratory relief and an award of damages against defendants in their individual capacities.  (*Id.* at pages 9-13, Page ID 11-15).

The matter is now before the court on the following motions:

(1)   Motion for summary judgment by defendants Spurbeck and Fockler based on the affirmative defense provided by 42 U.S.C. § 1997e(a)[3]  (docket # 13);

(2)   Motion for summary judgment by defendant Chick based on the affirmative defense provided by 42 U.S.C. § 1997e(a) (docket # 37);

(3)   Motion for summary judgment by defendant Burke (docket # 47, 59);

(4)   Motions for summary judgment by plaintiff (docket #s 28, 55); and

---

[2]All other claims were dismissed on January 17, 2014.  (docket #s 4, 5).

[3]Defendant Berg initially sought dismissal of plaintiff's claims against her on the basis of the affirmative defense, but withdrew her motion on April 15, 2014.  (docket # 22, Page ID 214-16).

(5)     Motion for a default judgment as to defendant Unknown McAllister (docket # 90).

For the reasons set forth herein, I recommend that all plaintiff's claims for declaratory relief be dismissed as moot.  I recommend that defendants' motions for summary judgment (docket #s 13, 37, 47, 59) be granted and that all plaintiff's claims against defendants Spurbeck, Fockler, and Chick be dismissed without prejudice and that judgment be entered in favor of defendant Burke on all plaintiff's claims.  I recommend that plaintiff's motions for summary judgment (docket #s 28, 55) be denied.  I recommend that plaintiff's motion for a default judgment against defendant McAllister (docket # 90) be denied and that all plaintiff's claims against McAllister be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure.  This report and recommendation serves as plaintiff's notice of impending dismissal.  I recommend that all plaintiff's claims against Nurse Berg be dismissed for failure to state a claim upon which relief can be granted.[4]

## Applicable Standards

### A.     Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010).  The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The court

---

[4]The recommendation for dismissal for failure to state a claim is made under statutory authority.  *See* 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B), and 42 U.S.C. § 1997e(c).

-4-

must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056

(6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### B. Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies

Defendants Spurbeck, Fockler, and Chick have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is

a strong one.  To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216.  The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies.  The Supreme Court reiterated that "no unexhausted claim may be considered."  549 U.S. at 220.  The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims.  549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law.  *Jones v. Bock*, 549 U.S. at 218-19.  In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93.  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009).  Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court.  548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir.

2011); *see* 42 U.S.C. § 1997e(a).  The procedural bar does not apply where the State declines to enforce its own procedural rules.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[5]  In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies.  *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance.  The following is an overview of the grievance process.  Inmates must first attempt to resolve a problem within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control.  *Id.* at ¶ P.  If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted resolution.  *Id.*  The Policy Directive also provides the following directions for completing Step I grievance forms:  "The issues should be stated briefly but concisely.  Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R (emphasis in original).  Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are

---

[5]A copy of the policy directive is found in the record.  *See* docket # 14-2, Page ID 77-83.

not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent for grievances regarding health care issues is the Regional Health Administrator or the Administrator's designee. *Id* . at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. The Grievance and Appeals Section forwards grievances regarding health care issues to the Administrator of the Bureau of Health Care Services (BHCS). The BHCS Administrator is required to ensure that the grievance is investigated and a response provided to the Grievance and Appeals Section in a timely manner. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

## Proposed Findings of Fact

The following facts are beyond genuine issue. Plaintiff is an inmate held in the custody of the Michigan Department of Corrections (MDOC) on criminal convictions. He is currently an inmate at the Marquette Branch Prison (MBP). (docket # 100). Plaintiff's complaint concerns conditions of his confinement at the Bellamy Creek Correctional Facility (IBC) in July and August of 2010. The defendants are Gail Burke, D.O., Elizabeth Berg, R.N., Connie Chick, R.N., John Spurbeck, R.N., and Corrections Officer Chip Fockler.

On July 9, 2010, plaintiff was transferred to the Bellamy Creek Correctional Facility (IBC). (Plf. Decl. ¶ 8, Page ID 740). Plaintiff had been diagnosed with diabetes and had a history of non-compliance and misuse of his insulin medication before his arrival at IBC. For example, on April 21, 2010, plaintiff injected himself with more than the prescribed dosage of insulin and refused to allow medical staff to test his blood sugar. (docket # 62, Page ID 575-76). On July 5, 2010, plaintiff

filled an entire syringe of insulin and injected it into his abdomen, and threw his syringe on the table. Subsequently, he refused to allow medical staff to check his blood sugar.  (*Id.* at Page ID 580). Plaintiff was kept under suicide observation and indicated that if he had really wanted to kill himself he would have taken his fast acting insulin rather than slow acting insulin.  (*Id.* at Page ID 583).  On July 6, 2010, plaintiff thwarted a nurse's attempt to check his blood sugar.  Progress notes indicate that plaintiff "took a lancet and walked away from the cell door yelling, 'You stupid ass bitch.  You just got this job but you about to lose it since you want to be so damn mean.'  Inmate refused to give nurse BS [blood sugar] results."  (*Id.* at Page ID 595).

Plaintiff continued to be a difficult patient at IBC.  Progress notes dated July 11, 2010, state, "Prisoner is argumentative with nursing staff during insulin line.  Prisoner unable to draw up own insulin.  Then argues with nursing staff after they draw insulin.  Comes to HS line and argues with nurse about his dose again.  Prisoner was ordered away from the med window."  (*Id.* at Page ID 589).  Plaintiff filed a grievance complaining that the nurses had yelled at him.  (Compl. ¶ 10, Page ID 5;[6] docket # 83-3, Page ID 861).

On July 23, 2010, plaintiff was charged with the major misconduct of assault and battery (staff victim) and was moved to an administrative segregation cell.  (Plf. Decl. ¶ 12, Page ID 740;

---

[6]Plaintiff's complaint is verified under penalty of perjury.  It is considered as an affidavit in opposition to defendant's motion for summary judgment.  *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).  "Verified" arguments and legal conclusions are not evidence, however.  Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Medison Am. Inc. v. Preferred Med. Sys., Inc.*, 357 F. App'x 656, 662 (6th Cir. 2009); *see also Stine v. State Farm Fire & Cas. Co.*, 428 F. App'x 549, 550 (6th Cir. 2011) (A "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment.").

Compl. ¶ 12, Page ID 6; docket # 19-4, Page ID 172, Major Misconduct Report).  Nurse Chick

described plaintiff's assault and battery as follows in her Major Misconduct Report:

> Prisoner Briggs 447282 was at insulin window.  Prisoner Briggs refused his blood sugar test because his machine is restricted to Health Care.  Prisoner Briggs became angry and began shaking his finger at nurses.  Prisoner Briggs was instructed to take his insulin injection.  After giving himself his injection he angrily threw the syringe with needle through the window opening striking my left lower leg.

(docket # 19-4, Page ID 172).  Plaintiff received a hearing on the major misconduct charge.  Plaintiff

conceded that he had thrown the needle, but denied hitting Nurse Chick.  The witness statements did

not support plaintiff's version of events.  The hearing officer explained her reasons for finding

plaintiff guilty of the major misconduct:

> Hearing officer finds the statements of RN Chick, LPN McAl[l]ister and [O]fficer Fockler that prisoner was given a syringe to inject insulin and then he threw the syringe through the window opening and it struck RN Chick in the leg.  Hearing officer finds prisoner's action was an intentional non-consensual touching of RN Chick with intent to injure or physically abuse and the charge is sustained.  Hearing officer finds reporter credible based on statements of [N]urse McAllister and [O]fficer Fockler.

(docket # 19-4, Page ID 173).  As a result of this major misconduct conviction, plaintiff was

required to serve 30 days of detention.  (*Id.*; Compl. ¶ 18, Page ID 7).

Plaintiff was moved to an administrative segregation cell.  He states that from July 23, 2010,

through July 26, 2010, he did not eat or take any insulin.  (Plf. Decl. ¶ 13, Page ID 741).

On July 25, 2010, plaintiff refused to have his blood sugar tested.  He took the syringe and

stated, "I wonder what would happen if I put it in my vein and kept pushing air into my vein."

Plaintiff refused to give the syringe back to the nurse.  Nurse Spurbeck gave plaintiff a major

misconduct ticket for disobeying a direct order.  (docket # 22-2, Page ID 221, Major Misconduct

Report ; Compl. ¶ 14, Page ID 6).  A hearing officer found plaintiff guilty of this major misconduct

and sentenced him to 10 days of detention.  (Compl. ¶ 17, Page ID 7; docket # 22-2, Page ID 220).

On July 27, 2010, Dr. Burke reviewed plaintiff's medical records.  (docket # 55-1, Page ID 506-07).  Although plaintiff had been using insulin exclusively to treat his diabetes, Dr. Burke "believed that several factors indicated Briggs was a Type II, or non-insulin dependent, diabetic, including:  the fact that he was diagnosed in 2006 as an adult, that he has a family history of diabetes, and that he had high triglycerides, indicating metabolic syndrome, which is exclusive to Type II, rather than Type I diabetes."  (Burke Decl. ¶ 10, Page ID 547; docket # 62, Page ID 593-95).  Accordingly, Dr. Burke "believed that is was medically appropriate to discontinue his long acting insulin, Lantus, and the rapid-acting, sliding scale insulin, Novolin, and put him on oral diabetes medications, specifically Metoformin and Glyburide."  (Burke Decl. ¶ 10, Page ID 547; docket # 62, Page ID 593-95).  Plaintiff was offered the Lantus insulin on July 28 and 29, 2010, but he refused to have his blood sugar tested and refused the Lantus.  During this time, plaintiff showed no signs or symptoms of hyperglycemia.  (Burke Decl. ¶ 11, Page ID 548; docket # 62, Page ID 596-97).

On July 29, 2010, Dr. Burke had his initial face-to-face meeting with plaintiff.  (docket # 55-1, Page ID 507; Plf. Decl. ¶ 16, Page ID 741; Burke Decl. ¶ 10, Page ID 547).  Dr. Burke instructed plaintiff that the standard care was management of Type II diabetes with Metformin, an oral anti-diabetic drug.  In addition, plaintiff needed to be on an ACE inhibitor for renal protection.  He needed to adhere to strict diabetes management, including taking the appropriate medications, maintaining a healthy diet, and exercising on a regular basis.  (Burke Decl. ¶ 12, Page ID 548; docket # 62, Page ID 599-601).  Dr. Burke prescribed 500 mg of Glucophage, an oral antidiabetic medication, twice a day with a goal of increasing it as necessary.  He discontinued plaintiff's Lantus insulin prescription because the American Diabetes Association advises that Type II diabetes can

-13-

be well controlled with oral medications and because plaintiff had a history of abusing his insulin injections.  (Burke Decl. ¶ 13, Page ID 548; docket # 62, Page ID 599-601).  Plaintiff disagreed with the prescribed course of treatment.  (Plf. Decl. ¶ 16, Page ID 741).

On August 2, 2010, despite the explanations provided by Dr. Burke, plaintiff complained that Glucophage was not working.  On August 3, 2010, plaintiff complained that Glucophage gave him gas and diarrhea.  Dr. Burke explained that these were not uncommon side effects of Glucophage, and they usually resolve after the patient takes the medication for a while.  Burke instructed plaintiff that he needed to give it more time and Burke indicated that he would prescribe additional medication.  At that time, plaintiff threatened to refuse to take all his oral medications and would only take Lantus.  Dr. Burke informed plaintiff that this would be an unfortunate choice and encouraged plaintiff to stay on the course of treatment that he had prescribed.

On August 2, 2010, Dr. Burke added Glipizide, a different acting oral anti-diabetic medication, to plaintiff's regimen.  As a result of plaintiff's threatened non-compliance with treatment, Dr. Burke restricted plaintiff's medication, meaning that it would have to be administered by a nurse.  (Burke Decl. ¶ 14, Page ID 548-49; docket # 62, Page ID 604-07).

On August 6, 2010, plaintiff was called out to the medical department for a blood test and other lab work.  Plaintiff refused to appear for these tests.  On August 9, 2011, plaintiff complained of no longer being on insulin, but refused the oral anti-diabetic medications that Dr. Burke had prescribed.  (Burke Decl. ¶¶ 16, 17, Page ID 549; docket # 62, Page ID 608-11).

On August 11, 2010, plaintiff sought treatment from Dr. Burke for an abscess on his left buttock.  Dr. Burke started plaintiff on the antibiotic Bactrim.  Dr. Burke was concerned that plaintiff's refusal to take the prescribed diabetes medications would result in elevated glucose levels

and "predispose him to infection[.]"  Dr. Burke scheduled plaintiff for a follow-up treatment by Dr.

Holmes the next day.  (docket # 62, Page ID 612; Burke Decl. ¶¶ 17-19, Page ID 549).  The progress

notes for August 11, 2010, documented plaintiff's ongoing refusal to comply with prescribed

treatment:

> I again encourage Mr. Briggs to take the oral medications I have prescribed to control his type 2 diabetes.  I prescribed Glucophage and Glyburide, as well as Vasotec.  I have spoken with him at length about the need to start him on oral medications, per American Diabetic Association guidelines.  I have also informed him that all diabetics need to be on an ACE inhibitor to protect their kidneys.  Apparently, Mr. Briggs still refuses to take any of these medications because "he knows better, and he wants insulin."  At one time he said that he would not take the glucophage because it gave him "gas."  I told him I could prescribe medication to help with that symptom; he refuses.  He also refuses to take the glyburide or the vasotec for reasons he will not articulate.  Today I informed him that he has a constellation of symptoms referred to as metabolic syndrome or syndrome X.  Specifically, he has hyperglyceridemia and hypertriglyceridemia.  I informed him that his July 30 labs show his triglycerides are over 400 and that he needs to be on medication for this condition as well.  He refuses.  I urged him to take these medications, and explained that if he does not get these symptoms under control he is putting himself at risk for coronary artery disease over the long term.  He still refuses to take any of these medications.  Therefore, I asked him to sign the MDOC/Bureau of health Care Release from Responsibility for Medical treatment form.  He refused to sign it in the presence of two corrections officers and Nurse Practitioner Hammond.  Ms. Hammond witnessed this on the form.
>
> I cannot understand Mr. Briggs's intent in refusing all medications to help control his diabetes.  The treatment plan I offered him is in strict accord with guidelines of the American Diabetic Association, and meets the standard of care.  He is correct when he tells me I cannot force him to take glucophage, glyburide and vasotec.  I have made it clear to him that he does not need insulin to manage his diabetes, and I will not prescribe it for him.  We will continue to offer optimal medical care to Mr. Briggs and hopefully he will become willing to accept it.

(docket # 62, Page ID 612; *see also* Page ID 614; Burke Decl. ¶ 18, 19).  Plaintiff continued to voice

his disagreement with Dr. Burke's decision to prescribe oral medications for his diabetes.  (docket

# 55-1, Page ID 503).  Plaintiff states that he told Dr. Burke that he was allergic to Bactrim.  (Plf.

Decl. ¶ 18, Page ID 742).  Dr. Burke has no recollection of any such statement.  There is nothing

in the contemporaneous medical records indicating that plaintiff was "highly allergic to Bactrim and

-15-

Doxycycline, and that these medications [would] specifically affect his penis." (docket # 55-1, Page ID 508).

On August 11, 2010, Nurse Berg gave plaintiff the antibiotic Bactrim that Dr. Burke had prescribed.  Plaintiff states that less than 5 minutes after taking 1 dose of Bactrim his penis started tingling, swelling, and the skin started to peel.  (Plf. Decl. ¶ 19, Page ID 742).

On August 12, 2010, Dr. Holmes performed an incision and drainage of buttock abscess. Progress notes record that plaintiff told Dr. Holmes that Bactrim exacerbated his herpes.[7]  Dr. Holmes stopped the Bactrim prescription, gave plaintiff Acyclovir for his herpes, Augmentin as an antibiotic, and Ultram as a pain reliever.  (docket # 62, Page ID 616; Burke Decl. 22, Page ID 550). There is nothing in the medical record supporting plaintiff's assertion that Bactrim caused penile injury.  (Burke Decl. ¶ 22, Page ID 550).  The injury that plaintiff claims is not indicative of an allergic reaction to an antibiotic medication; such reactions are not typically localized to a particular area.  (Burke Decl. ¶ 549).

Plaintiff was attended by medical staff on a daily basis between August 12 and August 20, 2010.  At no time during this period did plaintiff mention any rash, infection or other bleeding or peeling of his penis.  On August 20, 2010, plaintiff's argumentative and insubordinate behavior prevented medical personnel from changing the dressing. Plaintiff refused all medical call outs from August 23 to August 27, 2010.  On September 3, 2010, he refused a blood draw.  (Burke Decl. ¶¶ 23-25, Page ID 550-51; docket # 62, Page ID 617-635).

---

[7]Plaintiff insists that he does not have an STD and that he "showed Dr. Holmes [his] penis." (Plf. Decl. ¶ 21, Page ID 742).

On September 6, 2010, plaintiff complained of a cyst on his groin area.  On September 8, 2010, Dr. Holmes performed an incision and drained this abscess.  The wound was cleaned and dried on September 9, 2010, but on September 10, plaintiff refused to have the dressing changed.  On September 10, 2010, plaintiff began refusing his prescribed diabetes medication and antibiotics.  On September 13, 2010, plaintiff was so belligerent and argumentative that his dressing could not be changed.  On September 17, 2010, Dr. Briggs noted plaintiff's history of non-compliance, but at this point he was at least picking up his medication.  Plaintiff displayed no sign of infection on September 18, 2010.  (Burke Decl. ¶¶ 26-29, Page ID 551; docket # 62, Page ID 636-53).

In November 2010, plaintiff was transferred to another prison.  (docket # 62, Page ID 654; Burke Decl. ¶ 30, Page ID 551).  The care that Dr. Burke provided was medically appropriate.  (Burke Decl. ¶ 31, Page ID 552).  The abscesses that plaintiff experienced were caused by his failure to take the medication that had been prescribed.  (*Id.*).

**Grievances**

Plaintiff filed five grievances at IBC that he pursued through Step III decisions by the MDOC's Grievance and Appeals Section.  (docket # 83-3, Page ID 841-57).

1.  <u>IBC-10-12-2005-12e</u>

On July 21, 2010, Bellamy Creek Correctional Facility's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. IBC-10-12-2005-12e.  In this grievance, plaintiff complained that on July 7, 2010, a nurse gave him too much insulin and that another nurse had a nasty attitude:

> On 7-10-10 the nurses on duty denied me proper medical attention after giving me a over draw of too much regular insulin.  I was given 12 units by the nurse because she had assumed I only take regular in the evening when I said something about the Lantus she said I only get regular that's when I realized she gave me more regular than I'm suppose[d] to

take.  Then when I returned later to check my sugar level to be safe & because I was feeling a sugar drop in my being I was yelled at and refuse by the older blonde nurse & the nurse who gave me the wrong dose.  I was threatened with disciplinary actions by the older nurse who had a very nasty attitude with me & yelled at me like a child.  I feel disrespected & as though my health needs are not being met appropriately.

(docket # 83-3, Page ID 861).  Plaintiff's grievance was denied at Step I.  (*Id.* at Page ID 862).  The

Step II response indicated that on July 10, 2010, plaintiff had been argumentative with the nursing

staff during insulin line.  He then argued with the nursing staff after they drew up his insulin.  He

then returned to health care and wanted to argue about the dose and was ordered away from the

window.  (*Id.* at Page ID 860).  Plaintiff's Step III appeal was due on or before November 2, 2010.

The Grievance and Appeals Section received plaintiff's appeal on January 26, 2011, and it was

rejected because it was untimely.  (*Id.* at Page ID 858).

2.    IBC-10-08-2180-12f

On August 6, 2010, Bellamy Creek Correctional Facility's grievance coordinator received

a grievance from plaintiff and assigned it Grievance No. IBC-10-08-2180-12f.  (docket # 83-3, Page

ID 867).  Plaintiff's grievance against Dr. Burke was as follows:

After having a few days of refusing to deal with nurses due to disagreement and disrespect, I was seen by Dr. Burk who changed my insulin to pills without my requesting.  My diabetes has been controlled for years with insulin by all my past physicians.  But because [of] a situation with the nursing staff, my insulin has been changed to pills.  I'm the person with diabetes not the nursing staff whom I refuse to see.  To change my medicine to correct any problem between myself & the nurses is definitely a malpractice, a violation of my health treatment.

(docket # 83-3, Page ID 867).  Plaintiff's Grievance was denied at Step I.  (*Id.* at Page ID 868).  The

Step II response indicated that plaintiff was receiving medically appropriate treatment.  (*Id.* at Page

-18-

ID 866).  On February 7, 2011, the Grievance and Appeals section rejected this grievance as duplicative of Grievance No. IBC-10-12-2005-12e (*Id.* at Page ID 864).[8]

3.  IBC-10-08-2206-12f

On August 9, 2006, Bellamy Creek Correctional Facility's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. IBC-10-08-2206-12f (docket # 83-3, Page ID 873).  Here, plaintiff made the following complaints:

> I did not in no way request healthcare and its employees to change my 20 units of Lantus insulin.  I made no complaints of my diabetes or my meals.  But this healthcare has made my body & health have problems.  I'm being denied to have the medication & equipment.  I need to survive as a diabetic who is insulin dependent.  I have no meter due to this healthcare facility so my blood sugars are not being monitored as well.  I've asked for my meter & medicine & meals.  All denied by staff.

(*Id.* at Page ID 873).  Plaintiff's grievance was denied at Step I.  (*Id.* at Page ID 874).  His grievance was rejected at Step II as duplicative of grievances IBC-10-08-2180-12f and IBC-10-12-2005-12e. (*Id.* at Page ID 872).  The grievance was rejected on the same basis at Step III.  (docket # 83-3, Page ID 870).

4.  IBC-10-07-1999-12e

On July 21, 2010, Bellamy Creek Correctional Facility's grievance coordinator received a grievance from plaintiff and assigned it IBC-10-07-1999-12e.  (docket # 83-3, Page ID 879).  In this grievance, plaintiff sought to justify actions that he had taken on July 15, 2010:

> On the date of 7-15-10 I went to medical insulin & turned in two lancets & gave my blood sugar level of 304.  The nurses on duty drew 10 units of regular in my presence, and gave me another syringe with a clear liquid I did not observe her draw, she stated it was my insulin, but I requested she draw my medicine in my presence because she gave me insulin only 5 days prior to today therefore I requested to see the insulin taken out [of] my bottle &

_____

[8]Dr. Burke is not seeking dismissal of any of plaintiff's claims against her on the basis of the affirmative defense provider by 42 U.S.C. § 1997e(a).

> she refused and a old white nurse w[ith] blonde hair yelled at me & said I'm refusing because I requested proper treatment. A third nurse was there[,] female and she did not disrespect me, but the other two nurses refuse me 20 units of Lantus & disrespected me & refuse me treatment proper.

(*Id.* at Page ID 879). Plaintiff's grievance was denied at Step I. His appeal to Step II was denied because his medical records showed that he had been very argumentative and refused his insulin because he did not see the nurse draw it up. "Nursing documented that he had been standing [at] the window when it was drawn up." (docket # 83-3, Page ID 878). His appeal to Step III was rejected because it was untimely. (*Id.* at Page ID 876).

5.    IBC-10-09-2535-17c

On September 1, 2010, Bellamy Creek Correctional Facility's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. IBC-10-09-2535-17c. (docket # 83-3, Page ID 884). This was a grievance against a non-party, Corrections Officer Northrup for allegedly retaliating against plaintiff. Plaintiff claimed that on August 23, 2010, Northrup had somehow deprived plaintiff of a dressing change for his wound in retaliation for plaintiff's grievances. Plaintiff's grievance was denied at Step I because plaintiff had refused his medical call-out on August 23, 2010. (*Id.* at Page ID 885). The denial of this grievance was upheld at Steps II and III. (*Id.* at Page ID 881-83).

Plaintiff filed a grievance against Nurse Berg that did not conclude with a Step III decision by the Grievance and Appeals Section. On August 16, 2010, IBC's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. IBC-10-08-2309-12F. In this grievance, plaintiff complained that Nurse Berg failed to inform him that the medication she gave him on August 11, 2010, was Bactrim:

> Dr. Burke ordered me a antibiotic called Bactrim for a ciss [sic].  I am allergic to Bactrim & I was not made aware by Nurse Lisa that I'm being given Bactrim even after I asked her & told her I could not take Bactrim or Doxocyclin.  Dr. Burke[d] refuse to tell me what she was planning to do about my ciss [sic] after she looked at it and after I asked her she just disregarded my known allergic problem & had a nurse give me something deliberately which caused me to have a swollen, sore & peeling penis & itching.

(docket # 19-2, Page ID 159).  Plaintiff's grievance was denied at Step I.  The nurse dispensed the medication as ordered.  (docket # 19-2, Page ID 160).  The Step II response reiterated that doctors, not nurses make the determination regarding the medication a patient receives.  (*Id.* at Page 162).  Plaintiff states he did not receive a Step III response "after numerous attempts to inquire a response for exhaustion in this matter."  (Plf. Aff. at 1, docket # 19-5, Page ID 174).  Nurse Berg has withdrawn her motion claiming entitlement to dismissal of plaintiff's claims against her on the basis of the affirmative defense provided by 42 U.S.C. § 1997e(a) (docket # 22 at Page ID 214-16).

On October 21, 2013, plaintiff filed this lawsuit.

### Discussion

**I.      Unknown McAllister**

Plaintiff has filed a motion for entry of a default judgment against defendant Unknown McAllister.  (docket # 90).  This defendant has never been served or otherwise appeared in this lawsuit.  Plaintiff had no foundation for seeking entry of default, much less a default judgment.  *See* FED. R. CIV. P. 55; *see also Schomaker v. General Motors , Inc.*, No. 1:10-cv-765, 2011 WL 4433167, at * 8 (W.D. Mich. Aug. 29, 2011) ("[T]he entry of a default is a prerequisite [ ] to entry of a default judgment under Fed. R. Civ. P. 55(b)."); *Russell v. Tribley*, No. 2:10-cv-14824, 2011 WL 4387589, at *8 (E.D. Mich. Aug. 10, 2011) ("Because a party has no duty to plead until properly served, sufficient service of process is a prerequisite to entry of default.")  (collecting

cases).  I recommend that plaintiff's motion for entry of a default judgment against Unknown McAllister (docket # 90) be denied.

All plaintiff's claims against defendant Unknown McAllister should be dismissed for failure to achieve service of process.  This defendant has never been served with process or otherwise appeared during the seventeen months this lawsuit has been pending.  Accordingly, I recommend that all plaintiff's claims against defendant Unknown McAllister be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure.  This report and recommendation serves as plaintiff's notice of impending dismissal.  *See Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004); *accord Reynosa v. Schultz*, 282 F. App'x 386, 393-94 (6th Cir. 2008).

## II.    Mootness

Plaintiff is now an inmate at Marquette Branch Prison (MBP).  Defendants are employed at Bellamy Creek Correctional Facility (IBC).  Accordingly, plaintiff's claims for declaratory relief against defendants are moot.  *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

## III.   First Amendment

Plaintiff's retaliation claims fail as a matter of law.  This case is indistinguishable from *Jones v. Heyns*, No. 1:12-cv-1324, 2014 WL 1607621 (W.D. Mich. Apr. 22, 2014).  In *Jones*, Prisoner Anthony Jones claimed that the misconduct charges he had been convicted of were retaliatory in violation of his First Amendment rights.  District Judge Robert J. Jonker of this Court determined that it was unnecessary to address whether Jones exhausted his administrative remedies on retaliation claims because the prisoner's retaliation claims failed as a matter of law:

To prove a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff engaged in activities protected by the Constitution or statute; (2) the defendant took an "adverse action" that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) this adverse action was taken at least in part because of the exercise of the protected conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment.*" Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999). "A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.*" Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)).

In this case, the misconduct report indicates that the "MDOC Directors Office" undertook an investigation that revealed that Jones's allegations against Shreve were "unfounded." (Docket # 1–1, Page ID 15.) The Office then "approved" the misconduct ticket for interference with the administration of rules. (*Id.*) Therefore, as in Jackson, Jones was found guilty of violating prison rules, based on evidence in the record, and that finding of guilt precludes any retaliation theory based on it.

Jones objects that his case is similar to *Wolfel v. Bates*, 707 F.2d 932 ([6th Cir.] 1983). In *Wolfel*, the Sixth Circuit held that prison authorities violated a prisoner's First Amendment right to seek redress of grievances where they failed to first determine whether the prisoner's statements constituted misconduct before punishing him. *Id.* at 934. Jones is mistaken. In this case, unlike in *Wolfel*, the record does not "reveal[ ] that prison authorities punished [Jones] without first finding [a misconduct violation]." *See id.* Rather, the record in this case establishes a guilty finding on the misconduct ticket that "essentially checkmates" Jones's retaliation claim. *Jackson*, 158 F. App'x at 662. Defendants are entitled to summary judgment on the retaliation claims. Therefore, the Court will adopt the Report and Recommendation to the extent that it recommends that this Court grant Defendant's motion for summary judgment.

*Jones v. Heyns*, 2014 WL 1607621, at * 2-3. Here, plaintiff was found guilty of the misconduct charges and the hearing officers' findings of guilt preclude plaintiff's retaliation claims. *Id.* at 3.

Defendant Burke is entitled to judgment in his favor as a matter of law on plaintiff's retaliation claim because the record shows that plaintiff's major misconduct of using the syringe and needle in an assault and battery against a nurse triggered the switch in his prescription to oral medications. *See Thaddeus-X*, 175 F.3d at 399.

## IV.     Eighth Amendment

Plaintiff alleges that Dr. Burke was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights under the Cruel and Unusual Punishments Clause.  In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05.  In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention.  *Westlake v. Lucas*, 537 F.2d 857, 860 n. 4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard.  Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298.  The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness.  A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837.  The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care.  Deliberate indifference

> requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted). Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims which sound in state tort law. *See Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011); *Westlake*, 537 F.2d 860 n. 5; *see also Reed v. Speck*, 508 F. App'x 415, 419 (6th Cir. 2012) ("The subjective component is intended 'to prevent the constitutionalization of medical malpractice claims.' ") (quoting *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009)).

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim against Dr. Burke for deliberate indifference to serious medical needs. There is no evidence of any deficiency in plaintiff's medical care. Plaintiff's disagreement with the treatment provided by Dr. Burke falls far short of supporting an Eighth Amendment claim. *See e.g.*, *Kosloski v. Dunlap*, 347 F. App'x 177, 180 (6th Cir. 2009); *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 357 (6th Cir. 2006).

I find that defendant Burke is entitled to judgment in her favor as a matter of law on all plaintiff's claims.

## V.     Exhaustion

Defendants Chick, Spurbeck, and Fockler have raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against them as required by 42 U.S.C. § 1997e(a).  Exhaustion is mandatory.  *Woodford*, 548 U.S. at 85.  "[N]o unexhausted claim may be considered."  *Jones v. Bock*, 549 U.S. at 220.  Plaintiff did not properly exhaust any claim against defendants before he filed this lawsuit.[9]  I find that defendants Chick, Spurbeck, and Fockler have carried their burden on the affirmative defense and are entitled to dismissal of all of plaintiff's claims.

## VI.     Nurse Berg

### 1.     State Law Claim

Plaintiff alleges that Nurse Berg committed malpractice on August 11, 2010, when she gave plaintiff the antibiotic Bactrim that Dr. Burke had prescribed.  (Compl. ¶ 36, Page ID 11).  This proposed medical malpractice claim is subject to the prerequisites imposed by Michigan law for bringing a malpractice claim, including the requirement that the complaint be accompanied by an affidavit of merit signed by a health professional, attesting to the defendant's failure to meet the standard of care.  MICH. COMP. LAWS § 600.2912d(1).  Plaintiff has failed to provide such an affidavit for defendant Berg, a failure that requires dismissal as a matter of state law.  *See Hamer v. County of Kent*, No. 1:13-cv-504, 2014 WL 1276563, at * 10-11 (W.D. Mich. Mar. 27, 2014).

---

[9]A prisoner cannot file his lawsuit first and then exhaust his administrative remedies after-the-fact.  *See Garren v. Prisoner Health Servs.*, No. 11-14650, 2012 WL 4450495, at * 2 (E.D. Mich. Aug. 6, 2012); *Rhinehart v. Scutt*, No. 2-10-cv-10006, 2011 WL 679699, at * 5 (E.D. Mich. Jan. 14, 2011); *Ross v. Duby*, No. 1:09-cv-531, 2010 WL 3732234, at * 1 (W.D. Mich. Sept. 17, 2010).

2.     Eighth Amendment

It is undisputed that on August 11, 2010, Dr. Burke had prescribed the antibiotic Bactrim in advance of a surgical procedure scheduled for the next day to drain an abscess on plaintiff's buttock. Nurse Berg gave plaintiff the medication as the physician had ordered.  Plaintiff bases his claim against Nurse Berg on the allegations set forth verbatim below:

> On August 11, 2010, Defendant Berg delivered plaintiff's evening medications along with the unknown pill, in which plaintiff asked defendant Berg what is the unknown pill?  She replied the antibiotic from defendant Dr. Burke.  Plaintiff replied, is this "Bactrim or Doxycyclin"?  Defendant Berg responded no, then stated Dr. Burke said to give it to you because you have surgery in the morning.  At this time plaintiff took the medications in the presence of defendant Berg.

(Compl. ¶ 21, Page ID 8).  The standards applicable to an Eighth Amendment claim have already been addressed above.  Plaintiff's abscess, which needed to be surgically drained on April 12, 2010, was an objectively serious medical need.  Nurse Berg was not deliberately indifferent to that medical need.  She gave plaintiff the antibiotic that Dr. Burke had prescribed.  Even assuming, *arguendo*, that plaintiff's allegations regarding a purported "allergic" reaction to Bactrim were sufficient to support the objective component, plaintiff did not allege facts sufficient to support the subjective component of an Eighth Amendment claim against Nurse Berg.  His alleged conversation with Nurse Berg did not include any warning that he was allergic to this medication, much less that his allergic reaction would be so severe and dangerous to his health that it would so outweigh the medical benefit to him of the protection against infection supplied by the antibiotic, that it would be tantamount to criminal recklessness for a nurse to give him the medication that the physician had prescribed.  At most, Nurse Berg gave plaintiff an incorrect answer.  This is not sufficient to support the subjective component of an Eighth Amendment claim against Nurse Berg.  *Farmer v. Brennan*, 511 U.S. at 837.

-27-

### Recommended Disposition

For the foregoing reasons, I recommend that all plaintiff's claims for declaratory relief be dismissed as moot. I recommend that defendants' motions for summary judgment (docket #s 13, 37, 47, 59) be granted and that all plaintiff's claims against defendants Spurbeck, Fockler, and Chick be dismissed without prejudice and that judgment be entered in favor of defendant Burke on all plaintiff's claims. I recommend that plaintiff's motions for summary judgment (docket #s 28, 55) be denied. I recommend that plaintiff's motion for a default judgment against defendant McAllister (docket # 90) be denied and that all plaintiff's claims against McAllister be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure. This report and recommendation serves as plaintiff's notice of impending dismissal. I recommend that all plaintiff's claims against Nurse Berg be dismissed for failure to state a claim upon which relief can be granted.


Dated:  March 16, 2015              /s/  Phillip J. Green
                                    United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).